FILED

2012 Nov-07  PM 03:46
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **SHEILA ANN ALLEN,** | ) | |
| | ) | |
| **Claimant,** | ) | |
| | ) | |
| **vs.** | ) | **Civil Action No. CV-12-S-0715-S** |
| | ) | |
| **MICHAEL J. ASTRUE,** | ) | |
| **Commissioner, Social Security** | ) | |
| **Administration,** | ) | |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OPINION AND ORDER

Claimant Sheila Allen commenced this action on March 1, 2012, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final adverse decision of the Commissioner, affirming the decision of the Administrative Law Judge ("ALJ") denying her claim for continuation of disability insurance benefits.[1]  For the reasons stated herein, the court finds that the Commissioner's ruling is due to be affirmed.

The court's role in reviewing claims brought under the Social Security Act is a narrow one.  The scope of review is limited to determining whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and whether correct legal standards were applied.  *See Lamb v.*

---

[1] As discussed more fully below, the Commissioner awarded a closed period of disability benefits from July 16, 2008 to March 29, 2010, but terminated those benefits as of March 30, 2010.

*Bowen*, 847 F.2d 698, 701 (11th Cir. 1988); *Tieniber v. Heckler*, 720 F.2d 1251, 1253

(11th Cir. 1983).

Because this case involves a termination of benefits, it must be considered

pursuant to 42 U.S.C. § 423(f), which provides that

> [a] recipient of benefits under this subchapter or subchapter XVIII of this chapter based on the disability of any individual may be determined not to be entitled to such benefits on the basis of a finding that the physical or mental impairment on the basis of which such benefits are provided has ceased, does not exist, or is not disabling only if such finding is supported by–
>
> > (1) substantial evidence which demonstrates that –
> >
> > > (A) there has been any medical improvement in the individual's impairment or combination of impairments (other than medical improvement which is not related to the individual's ability to work), and
> > >
> > > (B) the individual is now able to engage in substantial gainful activity.

42 U.S.C. § 423(f)(1).  Federal regulations define the term "medical improvement"

as

> any decrease in the medical severity of your impairment(s) which was present at the time of the most recent favorable medical decision that you were disabled or continued to be disabled.  A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with your impairment(s) . . . .

20 C.F.R. § 404.1594(b)(1).  Medical improvement is sufficient to support a

termination of benefits only if the medical improvement results in an increase in the

claimant's ability to perform basic work activities.   20 C.F.R. § 404.1594(b)(3).

The regulations also prescribe an eight-step evaluation process for determining

whether disability benefits should be terminated due to medical improvement.  Those

steps are:

(1) Are you engaging in substantial gainful activity?  If you are (and any applicable trial work period has been completed), we will find disability to have ended (see paragraph (d)(5) of this section).

(2) If you are not, do you have an impairment or combination of impairments which meets or equals the severity of an impairment listed in appendix 1 of this subpart?  If you do, your disability will be found to continue.

(3) If you do not, has there been medical improvement as defined in paragraph (b)(1) of this section?   If there has been medical improvement as shown by a decrease in medical severity, see step (4). If there has been no decrease in medical severity, there has been no medical improvement. (See step (5).) .

(4) If there has been medical improvement, we must determine whether it is related to your ability to do work in accordance with paragraphs (b)(1) through (4) of this section; *i.e.*, whether or not there has been an increase in the residual functional capacity based on the impairment(s) that was present at the time of the most recent favorable medical determination. If medical improvement is not related to your ability to do work, see step (5).  If medical improvement is related to your ability to do work, see step (6).

(5) If we found at step (3) that there has been no medical improvement or if we found at step (4) that the medical improvement is not related to your ability to work, we consider whether any of the

exceptions in paragraphs (d) and (e) of this section apply. If none of them apply, your disability will be found to continue. If one of the first group of exceptions to medical improvement applies, see step (6). If an exception from the second group of exceptions to medical improvement applies, your disability will be found to have ended. The second group of exceptions to medical improvement may be considered at any point in this process.[2]

(6) If medical improvement is shown to be related to your ability to do work or if one of the first group of exceptions to medical improvement applies, we will determine whether all your current impairments in combination are severe (see § 404.1521). This determination will consider all your current impairments and the impact of the combination of those impairments on your ability to function. If the residual functional capacity assessment in step (4) above shows significant limitation of your ability to do basic work activities, see step (7). When the evidence shows that all your current impairments in combination do not significantly limit your physical or mental abilities to do basic work activities, these impairments will not be considered severe in nature. If so, you will no longer be considered to be disabled.

(7) If your impairment(s) is severe, we will assess your current ability to do substantial gainful activity in accordance with § 404.1560. That is, we will assess your residual functional capacity based on all your current impairments and consider whether you can still do work you have done in the past. If you can do such work, disability will be found to have ended.

(8) If you are not able to do work you have done in the past, we will consider one final step. Given the residual functional capacity assessment and considering your age, education and past work experience, can you do other work? If you can, disability will be found to have ended. If you cannot, disability will be found to continue.

20 C.F.R. § 404.1594(f).

---

[2] None of the exceptions to medical improvements applies in this case.

The ALJ made the following findings in his September 10, 2010 administrative

decision:

1.    The claimant met the insured status requirements of the Social
      Security Act as of July 16, 2008, the date the claimant became
      disabled.

2.    The claimant has not engaged in substantial gainful activity since
      July 16, 2008, the alleged onset date (20 CFR 404.1520(b) and
      404.1571 *et seq.*).

3.    At all times relevant to this decision, the claimant has had the
      following severe impairments:   rheumatoid arthritis; mild
      degenerative joint disease of the lumbar spine, right shoulder, and
      bilateral knees; and obesity (20 CFR 404.1520(c)).

4.    From July 16, 2008 through March 29, 2010, the period during
      which the claimant was disabled, the claimant did not have an
      impairment or combination of impairments that met or medically
      equaled an impairment listed in 20 CFR Part 404, Subpart P,
      Appendix 1 (20 CFR 404.1520(d)).

5.    After careful consideration of the entire record, the undersigned
      finds that, from July 16, 2008 through March 29, 2010, the
      claimant was unable to perform or tolerate work activity for a full
      8-hour workday; 40-hour week, on a sustained basis, at any level
      of physical exertion, including sedentary work, due to chronic
      moderately severe pain and the resulting disabling limitations of
      function.

6.    From July 16, 2008 through March 29, 2010, the claimant was
      unable to perform past relevant work (20 CFR 404.1565).

7.    The claimant was born on October 7, 1963 and was 44 years old,
      which is defined as a younger individual age 18-44, on the
      alleged disability onset date (20 CFR 404.1563).

8.     The claimant has a limited education and is able to communicate in English (20 CFR 404.1564).

9.     From July 16, 2008 through March 29, 2010, considering the claimant's age, education, work experience, and residual functional capacity, there were no jobs that existed in significant numbers in the national economy that the claimant could have performed (20 CFR 404.1560(c) and 404.1566).

10.    The claimant was under a disability, as defined by the Social Security Act, from July 16, 2008 through March 29, 2010 (20 CFR 404.1520(g).

11.    Medical improvement occurred as of March 30, 2010, the date the claimant's disability ended (20 CFR 404.1594(b)(1)).

12.    Beginning on March 30, 2010, the claimant has not had an impairment or combination of impairments that meets or medically equals one of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1594(f)(2)).

13.    After careful consideration of the entire record, the undersigned finds that, beginning on March 30, 2010, the claimant has had the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), which she can perform while avoiding concentrated exposure to heat or cold, hazardous machinery, and unprotected heights, and would allow her to sit or stand at her option.  The claimant can understand, remember, and carry out instructions sufficient for low semi-skilled and unskilled work, and maintain concentration, persistence and pace for up to 2 hours sufficient to perform a regular workday with regular breaks.

14.    The medical improvement that has occurred is related to the ability to work (20 CFR 404.1594(b)(4)(I)).

15.    Since March 30, 2010, the claimant has been a younger individual age 45-49 (20 CFR 404.1563).

16.     Beginning on March 30, 2010, the claimant has been unable to perform past relevant work (20 CFR 404.1565).

17.     Beginning on March 30, 2010, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (*See* SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

18.     Beginning on March 30, 2010, considering the claimant's age, education, work experience, and residual functional capacity, the claimant has been able to perform a significant number of jobs in the national economy (20 CFR 404.1560(c) and 404.1566).

19.     The claimant's disability ended on March 30, 2010 (20 CFR 404.1594(f)(8)).[3]

Claimant contends that the Commissioner's decision is neither supported by substantial evidence nor in accordance with applicable legal standards. Specifically, claimant asserts that the ALJ's finding that she is able to perform sedentary work is not supported by substantial evidence, that the ALJ failed to explain the inconsistency between the vocational expert's testimony and the Dictionary of Occupational Titles, and that the ALJ failed to properly apply the Eleventh Circuit's pain standard. Upon review of the record, the court concludes these contentions are without merit.

**A.    ALJ's Residual Functional Capacity Finding**

---

[3] Tr. 25-34.

Claimant first contends that the ALJ's finding that she is capable of performing sedentary work was not supported by substantial evidence.  According to claimant, the ALJ's opinion is inconsistent with the report of Dr. Katherine Black, the consultative examiner.  Social Security regulations provide that, in considering what weight to give *any* medical opinion (regardless of whether it is from a treating or non-treating physician), the Commissioner should evaluate:  the extent of the examining or treating relationship between the doctor and patient; whether the doctor's opinion can be supported by medical signs and laboratory findings; whether the opinion is consistent with the record as a whole; the doctor's specialization; and other factors. *See* 20 C.F.R. § 404.1527(d).  *See also Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) ("The weight afforded a physician's conclusory statements depends upon the extent to which they are supported by clinical or laboratory findings and are consistent with other evidence as to claimant's impairments.").

Dr. Black examined claimant on September 30, 2008, and concluded that claimant would be able to stand and/or walk for a total of 2 hours during an 8-hour workday, with frequent breaks every 30-60 minutes.  She could sit for 2-4 hours during an 8-hour workday, with frequent breaks every 30-60 minutes.  She might need an assistive device to walk long distances.  She could lift and/or carry less than 10 pounds frequently, and about 10 pounds on occasion.  She had unspecified

postural limitations on bending, stooping, crouching, climbing, kneeling, balancing, crawling, and pulling, but she would be able to perform all manipulative maneuvers, including reaching, feeling, fingering, fine manipulation, and handling. Her only environmental limitation would be driving, and she would "do fine" with visual communicative, temperature, noise, or heights.[4] Claimant experienced some limitation of range of motion in her cervical spine, dorsolumbar spine, and right shoulder, but the range of motion in all other joints was normal.[5]

The ALJ afforded great weight to Dr. Black's opinion in determining that claimant was disabled from July 16, 2008 through March 29, 2010.[6] He nonetheless found that claimant's condition improved after the date of Dr. Black's examination, and that, as of March 30, 2010, claimant was capable of performing a limited range of sedentary work. That finding was based primarily upon the records of Dr. Joel Abbott, claimant's treating physician. On March 29, 2010, Dr. Abbott noted that plaintiff presented for an infusion of Remicade to treat her rheumatoid arthritis. She had been doing "fairly well with respect to her peripheral joint symptoms," and she denied "warm, tender, swollen joints in the interim." She also reported continual

---

[4] Tr. 277-78.

[5] Tr. 276-77.

[6] Tr. 29. Indeed, an individual with all the limitations assessed by Dr. Black would be unable to perform any job on a sustained, eight-hour-a-day basis, because she could only sit, stand, and walk for a maximum combined total of six hours during any given workday.

lower back discomfort.  Her symptoms included weakness, difficulty sleeping, joint pain and swelling, swelling in the legs, and headaches.  She had full range of motion in the wrists, elbows, and shoulders; minimal tenderness in the small hand joints, elbows, and shoulders; no synovitis in the feet, ankles, or knees; full range of motion in the ankles, knees, and hips; and minimal tenderness in the feet, ankles, and knees. Her gait and stance were within normal limits, and there was minimal axial tenderness.  Dr. Abbott's impressions were "Rheumatoid arthritis, doing well, tolerating current disease modifying therapy well," and "Lumbar degenerative disease – persistent back pain, this is chronic."  He continued claimant's Remicade therapy and suggested she return in 8 weeks for her next infusion.[7]

On May 24, 2010, claimant again presented for Remicade infusion.  She reported difficulty with her hands, right more than left; pain relief from Lortab; lower back pain; and foot pain and swelling, right more than left.  She acknowledged that Remicade had provided her relief, as she felt better than before she started the therapy.  Even so, her "maximum benefit from Remicade is about 2 weeks duration." Claimant's symptoms included difficulty sleeping, joint pain, joint swelling, morning stiffness, leg swelling, and headache. On examination, claimant exhibited tenderness in her wrists, but she nonetheless retained full range of motion in the wrists, elbows,

_____

[7] Tr. 334-37.

and shoulders. She also showed no synovitis in the feet, ankles, or knees; full range of motion in the ankles, knees, and hips; tenderness in the feet, ankles, and right knee, but no warmth or swelling; normal gait and stance; and tenderness in the lower lumbar spine. Dr. Abbott's impressions included rheumatoid arthritis with persistent symptoms in the hands and feet, and lumbar degenerative disease. He increased claimant's dose of Remicade, which claimant tolerated well.[8]

Claimant's next Remicade infusion from Dr. Abbott was on July 19, 2010. Dr. Abbott noted that claimant continued to struggle with the symptoms of rheumatoid arthritis, and she also experienced headaches as a result of high blood pressure, numbness in the left lower extremity, and right ankle swelling. Claimant informed Dr. Abbott that the increased dose of Remicade was helpful, but she complained that the effects of the treatment were not lasting. Claimant's symptoms included difficulty sleeping, joint pain and swelling, morning stiffness, high blood pressure, leg swelling, abdominal pain, and headache. On examination, she had no synovitis in the hands, wrists, or elbows, and full range of motion in the wrists, elbows, and shoulders. She had persistent mild tenderness in the small hand joints. She showed no synovitis in the feet, ankles, or knees, and she exhibited full range of motion in the ankles, knees, and hips. She had mild tenderness over the right ankle without significant swelling,

---

[8] Tr. 432-34.

warmth, or erythema.  Her gait and stance were within normal limits.  Dr. Abbott's

impressions included "Rheumatoid arthritis.  Remicade is beneficial, symptoms

persistent to some extent, she is having right ankle symptoms. An x-ray of the right

ankle today is nonrevealing," and lumber degenerative disease.  Dr. Abbott continued

claimant's dosage of Remicade and directed her to return in 8 weeks for her next

infusion.[9]

The ALJ afforded great weight to Dr. Abbott's opinions and clinical findings,

and concluded that Dr. Abbott's records revealed "medical improvement sufficient

to perform sedentary work."[10]  The ALJ also relied on April 30, 2010 office notices

from Dr. Darlene Traffenstedt, another of claimant's treating physicians.   Dr.

Traffenstedt noted that, although claimant had a history of rheumatoid arthritis, her

musculoskeletal exam revealed no rheumatologic manifestations.[11]  Moreover, there

is no evidence in the record that claimant's other conditions, including lumbar and

cervical spine problems and headaches, cause any functional limitations that are

inconsistent with the ALJ's residual functional capacity finding.

The ALJ was entitled to rely upon the medical records from Drs. Abbott and

Traffenstedt in evaluating whether claimant had experienced medical improvement,

---

[9] Tr. 428-31.

[10] Tr. 33.

[11] Tr. 462.

and those records constitute substantial evidence to support the ALJ's residual

functional capacity finding.  *See Winschel v. Commissioner of Social Security,* 631

F.3d 1176, 1179 (11th Cir. 2011) (holding that a treating physician's notes should

have been considered as the physician's opinion when they included a description of

the claimant's symptoms, a diagnosis, and a judgment about the severity of his

impairments).  The ALJ was not required, as claimant asserts, to order an additional

consultative examination to determine the extent of claimant's functional limitations

as of March 30, 2010.   It is true that the ALJ

> has an obligation to develop a full and fair record, even if the claimant
> is represented by counsel.  *Cowart v. Schweiker,* 662 F.2d 731, 735
> (11th Cir. 1981).    The ALJ is not required to seek additional
> independent expert medical testimony before making a disability
> determination *if the record is sufficient and additional expert testimony
> is not necessary for an informed decision.  Wilson v. Apfel,* 179 F.3d
> 1276, 1278 (11th Cir. 1999) (holding the record, which included the
> opinion of several physicians, was sufficient for the ALJ to arrive at a
> decision); *Holladay v. Bowen,* 848 F.2d 1206, 1209-10 (11th Cir. 1988)
> (holding the ALJ must order a consultative exam when it is necessary
> for an informed decision).

*Nation v. Barnhart,* 153 F. App'x 597, 598 (11th Cir. 2005) (emphasis supplied).  *See*

*also Green v. Social Security Administration,* 223 F. App'x 915, 923-24 (11th Cir.

2007) (even after the only physical capacities evaluation in the record had been

rejected, there still was substantial evidence, in the form of treatment records from

claimant's treating physicians, to support the ALJ's residual functional capacity

finding).  Furthermore, claimant bears the ultimate burden of producing evidence to

support her disability claim.  *See Ellison v. Barnhart,* 355 F.3d 1272, 1276 (11th Cir.

2003) (citing 20 C.F.R. §§ 416.912(a), (c)).  The court concludes that the record in

this case, including the office records from Drs. Abbott and Traffenstedt, was

sufficient to give substantial support to the ALJ's decision, and the ALJ was not

required to order an additional consultative evaluation.  Although it is clear that

claimant still does experience some symptoms and resulting limitations from her

rheumatoid arthritis and other ailments, substantial evidence supports the ALJ's

decision that claimant's condition had improved sufficiently by March 30, 2010, that

she could perform a limited range of sedentary work.

**B.      Inconsistency Between the Vocational Expert's Testimony and the**
         ***Dictionary of Occupational Titles***

        Claimant also asserts that the ALJ erred by failing to resolve inconsistencies

between the testimony of the vocational expert ("VE") about the number and types

of jobs available to her, and the descriptions of those jobs found within the

*Dictionary of Occupational Titles* ("DOT").  It is true that Social Security Ruling 00-

4p requires the ALJ to inquire into and resolve any such inconsistencies:

> Occupational evidence provided by a VE or VS generally should
> be consistent with the occupational information supplied by the DOT.
> When there is an apparent unresolved conflict between VE or VS
> evidence and the DOT, the adjudicator must elicit a reasonable

explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled. At the hearings level, as part of the adjudicator's duty to fully develop the record, the adjudicator will inquire, on the record, as to whether or not there is such consistency.

Neither the DOT nor the VE or VS evidence automatically "trumps" when there is a conflict. The adjudicator must resolve the conflict by determining if the explanation given by the VE or VS is reasonable and provides a basis for relying on the VE or VS testimony rather than on the DOT information.

SSR 00-4p, 2000 WL 1898704, at *2 (Dec. 4, 2000).

The ALJ did not explicitly inquire during the administrative hearing whether the ALJ's findings about jobs claimant could perform in the national economy was consistent with the DOT. To the extent that technical failure was error, it was completely harmless, as it is apparent that the VE's testimony did not present a conflict. As an initial matter, claimant appears to have misinterpreted the requirements of SSR 00-4p. That ruling requires an inquiry into inconsistencies between the VE's and DOT's descriptions of the requirements of certain jobs, not between the ALJ's residual functional capacity finding and DOT job descriptions. Claimant complains that the ALJ's inclusion of a sit-stand option in his residual functional capacity was inconsistent with the DOT definition of sedentary work, not that VE incorrectly determined that the jobs he identified would accommodate a sit-stand option, or that the VE's assessment of available jobs was inconsistent with the

15

DOT. Moreover, while it is true that the need for a sit-stand option would be inconsistent with the ability to perform a full range of sedentary work, *see* 20 C.F.R. § 404.1567(a) (defining the exertional requirements of sedentary work), the ALJ did not find that claimant was capable of performing a full range of sedentary work. Instead, the ALJ found that claimant could perform sedentary work with additional non-exertional limitations, *including* a sit-stand option. Even taking those additional limitations into account, the vocational expert identified sufficient numbers of jobs in the national economy that would be available to claimant. The also testified that the same jobs would be available even if the sit-stand option were removed from claimant's residual functional capacity.[12] Thus, to the extent there was any error in the ALJ's evaluation of the VE's testimony, it was completely harmless, and the Commissioner's decision will not be reversed on these grounds.

## C.    Pain

To demonstrate that pain or another subjective symptom renders her disabled, claimant must "produce 'evidence of an underlying medical condition and (1) objective medical evidence that confirms the severity of the alleged pain arising from that condition or (2) that the objectively determined medical condition is of such severity that it can be reasonably expected to give rise to the alleged pain.'" *Edwards*

---

[12] Tr. 95-96.

16

*v. Sullivan*, 937 F. 2d 580, 584 (11th Cir. 1991) (quoting *Landry v. Heckler*, 782 F.2d

1551, 1553 (11th Cir. 1986)). "After considering a claimant's complaints of pain, the

ALJ may reject them as not creditable, and that determination will be reviewed for

substantial evidence." *Marbury v. Sullivan,* 957 F.2d 837, 839 (11th Cir. 1992) (citing

*Wilson v. Heckler,* 734 F.2d 513, 517 (11th Cir. 1984)).   If an ALJ discredits

subjective testimony on pain, "he must articulate explicit and adequate reasons."

*Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing *Jones v. Bowen*, 810

F.2d 1001, 1004 (11th Cir. 1986); *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th

Cir. 1986)).

Here, the ALJ found that the claimant's medically determinable impairments

could reasonably be expected to produce the symptoms she alleged, but he

nonetheless concluded that claimant's statements regarding the intensity, persistence,

and limiting effects of her symptoms were not credible as of March 30, 2010, to the

extent they were inconsistent with the ALJ's residual functional capacity

assessment.[13]   The ALJ explained that claimant's testimony was not fully credible

because it was contradicted by medical evidence of improvement, including Dr.

Abbott's records of claimant's improvement after starting Remicade therapy and Dr.

Dr. Traffenstedt's notation that claimant was negative for rheumatologic

---

[13] Tr. 32.

manifestations.  The ALJ's decision complied with the Eleventh Circuit's requirement for articulating a basis for rejecting a claimant's credibility, and it was supported by substantial evidence.

**D.      Conclusion and Order**

In summary, the court concludes that the Commissioner's decision was in accordance with applicable law and supported by substantial evidence.  Accordingly, the decision is AFFIRMED.  Costs are taxed against claimant.  The Clerk is directed to close this file.

DONE this 7th day of November, 2012.

_____
United States District Judge